**Julius CORPUS, Petitioner-Appellant,**

v.

**Dr. George J. BETO, Respondent-
Appellee.**

No. 72–1478.

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1972.

Rehearing Denied Jan. 12, 1973.

954

Hubert Gill, Austin, Tex. (Court-appointed), for petitioner-appellant.

Crawford Martin, Atty. Gen., Roland Daniel Green, III, Sarah E. Phillips, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before DYER, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Petitioner Julius Corpus was convicted by a jury in a Texas state court of unlawfully possessing a narcotic drug. After an unsuccessful appeal to the Court of Criminal Appeals of Texas,[1] petitioner sought habeas relief in federal district court contending (1) that the prosecution knowingly acquiesced in the use of false testimony, (2) that the trial court erroneously refused to allow defense counsel to impeach the main prosecution witness,[2] and (3) that the trial court erred in admitting testimony concerning the prior use of narcotics by petitioner. The district court held an evi-

dentiary hearing and denied the petition. We affirm.

At petitioner's trial Mary Hernandez testified that while working as an undercover agent for the Austin, Texas Police Department she purchased a vial of amidone from petitioner for $45.00 in cash. As brought out by defense counsel on cross-examination Mary was a former drug addict, prostitute and mental patient who decided to aid the police in apprehending narcotics pushers in the Austin area. The prosecution's case at petitioner's trial, as well as its case at the several other trials involving this undercover agent,[3] depended almost entirely on the jury crediting Mary's testimony. When defense counsel asked Mary why she had decided to help the police she replied that she did so because she was "tired of living the life I was" and "seeing all those kids getting addicted" and "a lot of friends of mine being in the same position as I was".

After petitioner had been tried and convicted, however, several new facts came to the attention of defense counsel. It appeared that Mary had a common law husband, Conrado "Cornbread" Hernandez, who had a long record of arrests and two prior felony convictions involving narcotics. On August 28, 1968, Conrado had been arrested and charged with possession of narcotics paraphernalia. Bond was set at $25,000.00 since a conviction for this offense would have resulted in a mandatory life sentence under the Texas enhancement statute.[4] On September 8, 1968, the day before Mary went to work for the police department, Conrado's bond was reduced to $1,000.00 and he was released from custody and never indicted for the offense. Subse-

1. Corpus v. State, Tex.Cr.App.1971, 463 S.W.2d 4.

2. These two contentions are also asserted by four other petitioners whose cases were consolidated for oral argument with the *Corpus* case. Our disposition of the two contentions on this appeal will, of course, be equally applicable to the appeals of the other petitioners. See Arechiga and Perales v. Texas, 5 Cir. 1972 [No. 72–1476, November 24, 1972], 469 F.2d 646, Herrera v. Beto, 5 Cir. 1972 [No. 72–1477, November 24, 1972], 469 F.2d 956, Gonzales v. Lang, 5 Cir. 1972 [No. 72–2276, November 24, 1972] 469 F.2d 1075.

3. Approximately 45 individuals were prosecuted as a result of the undercover work of Mary Hernandez.

4. Article 23, Texas Penal Code, Vernon's Ann.

quently, on October 30, 1969, Conrado was indicted for burglary, but the indictment was dismissed at least in part because of Mary's assistance to the police department.

These facts, petitioner contends on appeal, conclusively demonstrate that with the acquiescence of the prosecution Mary lied on the witness stand and that her real motive for aiding the police was not a concern for the welfare of other people but a desire to obtain favorable treatment for her husband. It is of course settled law that the prosecution may not remain silent and knowingly allow perjured testimony to go uncorrected when it appears before the jury. Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; Napue v. Illinois, 1959, 360 U.S. 264, 79 S.Ct. 293, 3 L.Ed.2d 238. It is also true that the prosecution may not suppress material evidence regarding the credibility of a witness whose testimony might be determinative of the guilt or innocence of the accused. Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1199, 10 L.Ed.2d 215. In the case at hand the testimony challenged as false is a statement by the chief prosecution witness as to what motivated her to assist the police in the prosecution of numerous narcotics cases. Motivation, however, is a question of fact,[5] and it is at this point that petitioner's argument fails. At an evidentiary hearing the district court heard testimony from police officers and members of the prosecutor's staff and found that there was no understanding or agreement which could have motivated Mary's testimony. The record reveals that this finding is not clearly erroneous and this court is not at liberty to rule otherwise. Fed.R.Civ.P. 52(a); e. g. Lamarr v. Wainwright, 5 Cir. 1970, 423 F.2d 1104. Having failed to prove that the challenged testimony was indeed false petitioner does not come within the holdings of *Giglio* and *Napue* and the contention is therefore without merit. As to any argument that the prosecution withheld favorable evidence in violation of Brady v. Maryland, supra, petitioner is again bound by the district court's finding that no promise of favorable treatment was in fact made by the police department.

Petitioner also complains of the state trial judge's refusal to allow defense counsel to impeach Mary Hernandez' statement on cross-examination that she had never made a mistake in her prior identifications of narcotics pushers. Defense counsel proposed to show that Mary had identified one Jesse Serna as a man who sold heroin to her on October 8, 1968, when Serna was on that date committed to the Austin State Hospital. The purpose of introducing this evidence would have been to cast doubt upon Mary's identification of the defendant on trial. We hold that this ruling was well within the discretion of the state trial judge. In the federal courts, as well as the Texas state courts, the trial court has the discretionary power to disallow the impeachment of witnesses on collateral matters. See United States v. Anderson, 5 Cir. 1970, 425 F.2d 87; Corpus v. State, Tex.Cr.App.1971, 463 S.W.2d 4. In any event at the trial defense counsel conducted a lengthy cross-examination of Mary Hernandez and introduced much evidence which questioned her credibility. The jury was made aware of Mary's prior narcotics conviction, her record as a drug addict, and her reliance on prostitution to support the drug habit. Petitioner was not denied due process by the exclusion of this evidence.

As to the other arguments petitioner advances concerning the exclusion of the impeaching evidence, we have carefully considered each of them and we find them totally without merit.

The final contention raised by petitioner is that he was deprived of a fair trial by the introduction of testimony from a police officer who stated, over objection, that he observed scars

5. See, e. g., Williams v. Allen, 5 Cir. 1971, 439 F.2d 1398.

from needle punctures on petitioner's forearms. Due to our limited power of review in habeas cases arising from state trials, we are not empowered to grant the writ where the error complained of was a mere evidentiary mistake unless the mistake was "material in the sense of a crucial, critical, highly significant factor". Lawrence v. Wainwright, 5 Cir. 1971, 445 F.2d 281, 282, quoting from Luna v. Beto, 5 Cir. 1968, 395 F.2d 35. Under the circumstances of this case we cannot say that the introduction of the needle-mark testimony, if it was indeed error, created that degree of prejudice. See United States v. Johnson, 5 Cir. 1972, 453 F.2d 1195.

The denial of the writ of habeas corpus by the district court is hereby

Affirmed.